UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦

**United States of America,**

        **Plaintiff,**

  -v-            5:06-CV-428 (NAM/DEP)

**25.202 Acres of Land and building affixed to the land located in the Town of Champlain, Clinton County, New York; and Amexx Warehouse Company, Inc., d/b/a Duty Free Americas, Inc., et al.,**

        **Defendants.**

♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦♦

APPEARANCES:

Hon. Richard A. Hartunian, United States Attorney
Paula Ryan Conan, Esq., Assistant United States Attorney
100 South Clinton Street
Syracuse, New York 13261-7198
and
United States Department of Justice, Environmental Division
John O. Holm, Esq.
Michael K. Baker, Esq.
P.O. Box 561
Ben Franklin Station
Washington, D.C. 20044-0561
and
United States Department of Justice, Commercial Litigation
Kristin R. Muenzen, Esq.
P.O. Box 261
Ben Franklin Station
Washington, D.C. 20044-0261
Attorneys for Plaintiff

Hiscock & Barclay, LLP
David G. Burch , Jr., Esq., of counsel
Kevin R. McAuliffe, Esq., of counsel
One Park Place
300 South State Street
Syracuse, New York 13202-2078
and

Zimmer Law Office PLLC

Kimberly M. Zimmer, Esq., of counsel
Monroe Building, Suite 301
333 East Onondaga Street
Syracuse, New York 13202
Attorneys for Defendants.

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

In this condemnation action, defendant[1] moves (Dkt. Nos. 160, 171)[2] for a new trial. On April 4, 2006, the government took 25.202 acres along the United States-Canadian border on the east side of New York State Route 9 near Exit 43 from Interstate 87 in Champlain, New York ("subject property"). After trial, the jury awarded defendant $208,000 for the subject property. The Court assumes the reader's familiarity with the background of the case.

Defendant argues that the award of $208,000 represents a miscarriage of justice resulting from erroneous evidentiary rulings and improper argument by the government. First, defendant challenges this Court's March 9, 2010 pretrial Order (Dkt. No. 92) adopting a Report and Recommendation (Dkt. No. 77) of United States Magistrate Judge Gustave J. DiBianco, and granting the government's motion (Dkt. No. 43) to preclude the testimony of defendant's expert Michael E. Ellis to the extent that it relied on the income capitalization method of valuation. Using this method, Ellis arrived at a value of $10.3 million for four acres of the 25.202-acre parcel. He used the direct sales comparison approach to arrive at a value of $150,000 for the

---

[1] The Court refers to "25.202 Acres of Land and building affixed to the land located in the Town of Champlain, Clinton County, New York; and Amexx Warehouse Company, Inc., d/b/a Duty Free Americas, Inc., *et al.*" as "defendant."

[2] Defendant has submitted two identical motions, one filed before the Judgment was signed and one after.

remainder of the subject property.  In the exercise of its discretion pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Court found that Ellis's application of the income capitalization method to this vacant property was improper and resulted in an unreliable and speculative valuation.

The Order (Dkt. No. 92) further adopted Magistrate Judge DiBianco's recommendation to grant the government's motion (Dkt. No. 44) to preclude valuation testimony by John A. Couri, Steven D. Zurcher, Simon Falic, Joseph W. Kearney and any other valuation witnesses, to the extent that such testimony was based on Ellis's income capitalization appraisal.  The Court also ruled that Falic and Kearney, in their capacity as owners of the subject property, may give opinion evidence as to its value, on the ground that landowners are presumed to have special knowledge of their property.  *See United States v. 68.94 Acres of Land*, 918 F.3d 389, 397 (3d Cir. 1990).

In its challenge to the *Daubert* ruling, defendant complains that Magistrate Judge DiBianco issued the Report and Recommendation without an evidentiary hearing.  The transcript of the proceeding before Magistrate Judge DiBianco on April 27, 2009 demonstrates that defendant agreed to Magistrate Judge DiBianco's suggestion to go forward without an evidentiary hearing.[3]  Magistrate Judge DiBianco entertained exhaustive oral argument from both sides, and,

---

[3] The transcript of oral argument before Magistrate Judge DiBianco (Dkt. No. 82, pp. 3-4) reads:

> THE COURT: We had some discussions in chambers, and in light of the extremely voluminous depositions in this case, plus the exhibits, plus treatises and other reference materials, I thought that testimony might not be necessary and that I would certainly allow the parties to orally argue their positions in depth and refer to whatever exhibits they'd like to. So, if both sides would like to do that, we will go forward only with oral argument.
> Is that agreeable with the government?

(continued...)

after reviewing a voluminous record, decided the issue based on the law and undisputed facts, finding no factual issues requiring an evidentiary hearing.  In its objection (Dkt. No. 85) to Magistrate Judge DiBianco's Report and Recommendation, defendant argued that Magistrate Judge DiBianco improperly made factual findings that "impinge on the jury's role as fact-finder." A review of the record demonstrates, however, that the few "findings" to which defendant specifically objected were supported by Ellis' own report and/or were not a necessary ground for Magistrate Judge DiBianco's recommendation.  This Court found no material factual dispute that would require a hearing.

As for the merits of the ruling, Ellis' use of the income capitalization method of valuing the property is clearly improper for the reasons set forth in Magistrate Judge DiBianco's Report and Recommendation, which this Court adopted.  The Court does not repeat them here. A reading of the transcript of the oral argument before Magistrate Judge DiBianco highlights the flaws in Ellis' application of the income capitalization method.

On this motion, defendant contends that it should have been permitted to retain another expert once Ellis's income capitalization evidence was precluded.  This action was commenced on April 4, 2006.  After extensions of time, the parties exchanged expert reports on or about April 30, 2007, and rebuttal expert reports by September 28, 2007.  The 27-page in-depth rebuttal by the government's appraiser E. Anthony Casale, dated August 21, 2007, challenged Ellis's appraisal on a number of grounds, including those relied on by Magistrate Judge DiBianco and this Court.  The parties deposed Ellis and other witnesses.  On October 15, 2008 the parties made

---

[3](...continued)
  MR. HOLM: Agreeable with the government.
  THE COURT: Defense?
  MS. ZIMMER: Yes, Your Honor.

motions, including the government's motion to preclude Ellis' evidence.  On April 29, 2009, Magistrate Judge DiBianco held oral argument, and on December 29, 2009, he issued his Report and Recommendation, which this Court adopted on March 9, 2010.  Defendant's representatives and their attorneys are very knowledgeable and may be presumed to have been aware of the highly speculative and problematic nature of Ellis's valuation.  Having gambled on what it knew or should have known was a manifestly improper valuation, and after the passage of years and the expenditure of a great deal of effort on the part of the government and the courts, defendant cannot now reasonably be heard to complain.

According to defendant, the Court's *Daubert* ruling wrongfully precluded Ellis from testifying at trial to the fair market value of the subject property.  This is not so; Ellis was precluded from testifying to the fair market value only insofar as it was based on the income capitalization method.  Defendant was, of course, free to introduce Ellis' comparative sales analysis if it had chosen to do so.  Also, in its bench decision on motions *in limine*, the Court ruled that defendant could introduce evidence of the subject property's income potential as a duty-free store and how that income potential would affect the property's fair market value.[4]  *See*

---

[4] In its bench decision ruling on motions *in limine*, the Court ruled:

> Also in this motion, docket number 102, the government seeks preclusion of valuation testimony based on the income approach to value. In the March 9th, 2010 memorandum decision and order, docket number 92, adopting the report and recommendation of Magistrate Judge DiBianco, docket number 77, this court precluded all testimony based upon Michael E. Ellis' income capitalization appraisal. The Court did not, however, preclude all other evidence based on the income approach and rulings on admissibility must await trial. The court does not intend to charge the jury – excuse me -- excuse me, does intend. The court does intend to charge the jury that it may consider such evidence only to the extent that it would affect how much a willing buyer would be willing to pay and, further, that it would be improper to value the property as if there were a duty-free store currently operating on it.

(continued...)

*United States v. Meadow Brook Club*, 259 F.2d 41, 45 (2d Cir. 1958) ("It would be improper to value the property as if it were actually being used for the more valuable purpose. But the 'extent that the prospect of demand for such use affects the market value while the property is privately held' should enter into the calculation.") (citing *Olson v. United States*, 292 U.S. 246, 255 (1934)). Defendant conducted the trial on this theory, contending that the fair market value of the property was based on its highest and best use as a duty-free store. Defendant's counsel first made the argument in her opening statement, saying: "The value of this piece of property that the government took is based on the ability of that land to be used to operate a duty-free store." She added that the potential income stream from the prospective use of the property as a duty-free store "is something that a buyer would take into account in determining how much they were willing to pay to purchase the property." She then stated that the "propert[ies] that the government claims are comparable are not comparable. The government is trying to compare a piece of property that can be used to operate a duty-free store to properties on which a duty-free store cannot operate." Thus, she argued, the government's evidence "does not represent the fair

---

[4](...continued)
> Now the court intends to preclude all evidence based on the value of the property to the landowner for his particular purposes or to the government for some special use. Such evidence is irrelevant to the question of fair market value of the property. Thus, the Court will preclude all testimony concerning the subject property's particular value to the landowner for its own singular purposes, such as eliminating competition or expansion of existing business.
> ***
> As stated, the Court intends to charge the jury that it would be improper to value the property as if there were a store currently operating on it, and that evidence of income-producing potential of the property is relevant only to the extent that it would affect how much a willing buyer would be willing to pay. Again, the Court will preclude all testimony concerning the subject property's particular value to the landowner for its own purposes, and, again, such as eliminating competition or expansion of existing business. I think there was testimony about bus service, additional bus services that they would now run and use that land for.

market value of the property" because it does not reflect the highest and best use of the property, and the government's valuation at $184,000 is not just compensation.

At trial, after hearing an offer of proof outside the presence of the jury, and over the government's strong objection, the Court permitted defendant wide latitude in questioning Ellis regarding the subject property's income potential from possible future use as a duty-free store and the effect of that income potential on the property's market value.  *See Meadow Brook*, 259 F.2d at 45.  Ellis testified that the highest and best use was as a duty-free store and that such use would generate far higher income than any other.  He explained the correlation between ground lease payments and the value of the property, and testified that a landowner who granted a ground lease to an operator of a duty-free store would typically recover ground rent based on a percentage of the store's gross sales, usually 20 to 25 percent.  He stated that the existing duty-free store at Chaplain generated about $4 million in retail sales in 2005 and $4.45 million in 2006.

On cross-examination of Ellis, the government elicited testimony that there were two duty-free stores in Champlain, the existing one owned by defendant and another farther to the south; that Ellis did not do an economic feasibility study to ascertain whether the area could support a third duty-free store; that there has not been a new duty-free store in Champlain in 15 years; that defendant's existing store is immediately off the Interstate 87 exit, whereas the only access to the subject property was by driving north past the existing store on a dead-end service road; that the vacant 39.7-acre parcel immediately south of the subject property and north of the existing store (the Ridella Corp. property) is zoned the same as the subject property; and that 50 acres of the vacant 89.5-acre parcel (referred to by Ellis as Parcel No. 2) immediately south of the existing store is zoned the same as the subject property.

Defendant claims it was unfairly prejudiced by the government's questioning of Ellis regarding the Court's preclusion of his opinion of the subject property's fair market value. Ellis testified at trial that he had been qualified as an expert witness in state court "at least 50, maybe a hundred" times. After hearing argument on the issue, the Court ruled that as a result of the defendant's holding Ellis out as a highly qualified expert in condemnation matters, the government could cross-examine Ellis for purposes of impeachment by asking him "whether or not his proffered evidence in any condemnation proceeding regarding valuation of condemned property has ever been rejected by any court." The Court added: "If the answer is yes, there will be no follow-up questioning on that issue." This is precisely what happened; to the permitted question, Ellis responded, "Yes, on one occasion only." There is nothing unfair in this.

At trial, the Court also permitted defendant to introduce extensive – and practically unlimited – valuation testimony by its non-expert witnesses, including calculations based on the income capitalization method. Joseph W. Kearney, an officer of defendant Duty Free Americas, Inc. ("DFA"), testified at length regarding the income potential of the subject property. Kearney testified to the annual sales revenue of the existing store and other duty-free stores at both the Canadian and Mexican borders; the projected duty-free sales at the Champlain crossing; the percentage of income that a landowner would likely receive from the operator of a duty-free store under a ground lease; and the manner in which DFA would market the subject property. Kearney calculated that the subject property would generate $935,000 annually in ground rent income; that, applying a nine percent capitalization rate to the ground rent income, the value of the property was over $10 million; and that, even assuming that the subject property would attract only 50 percent of the sales, the value would be approximately $5.2 million. Adjusting for other

factors, he gave the value as $2 million.

On cross-examination, Kearney stated that he calculated the value of the subject property by applying a capitalization rate to a stream of income. He acknowledged that there had not been a stream of income from the subject property for many years and that no one had built a duty-free store in the area for at least 15 years. He believed it would be possible to put a duty-free store on Parcel No. 2. He was unaware that Parcel No. 2 had recently sold for about $1,840 an acre. He also acknowledged that he was not an appraiser.

Defendant also introduced testimony from John Couri, principal in the company that owned the subject property from 1986 to 1997. Couri testified regarding the duty-free business in general and the favorable location of the subject property for a duty-free store. He stated that the Champlain crossing was one of the most attractive Canadian-border crossings for the duty-free business, based on the number of vehicles and other factors. He said that in 1986 the sales at the Champlain crossing were about $2.5 million and that they increased in subsequent years. Simon Falic, chairman of defendant DFA, which in 2001 had purchased the subject parcel and other properties, including the nearby parcel on which DFA operates the existing duty-free store, testified to the gross sales income at DFA's duty-free stores at some other crossings, both on the Canadian and Mexican borders. The sales figures indicated that income increased at some crossings after competitors entered the area. John P. Luksic, DFA's director for regulatory compliance, testified regarding regulatory requirements to obtain a permit for a duty-free store, and stated his opinion that the subject property would be likely to obtain a permit. In sum, except for precluding Ellis from testifying to his improper income capitalization method, the Court did not significantly limit defendant's proof at trial.

Neither the government's closing argument nor the jury charge created undue prejudice to defendant. The comments by the government's counsel during summation were not so severe or significant as to prejudice defendant, particularly when viewed in context of the entire trial, especially the summations. Both parties' summations challenged the reliability, credibility, and objectivity of the other side's witnesses.[5] The jury charge did not favor the government or prejudice defendant in any respect, nor did it contain any error of law. The general "boilerplate" charge regarding credibility of witnesses did not prejudice defendant. Regarding opinion testimony, the charge treated expert opinion testimony and landowner opinion testimony equally, and the charge regarding the credibility of opinion witnesses clearly applied equally to both.[6]

---

[5] In particular, in his summation defendant's counsel challenged the objectivity of the government's appraiser Casale, arguing that, before beginning his appraisal, Casale already knew how much the government wanted to pay for the subject property. Counsel stated: "[T]hey give him the number in advance, I don't find that unbiased. I don't find that independent and, quite frankly, I don't think you should find that reliable."

[6] Regarding opinion evidence, the Court charged:

> Now the rules of evidence normally do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those we call expert witnesses. Witnesses who, by education and experience, have become expert in some science, profession or calling, and they may state their opinions as to relevant and material matters in which they profess to be an expert and may also state their reasons for their opinion.
>
> You should consider each expert opinion evidence in this case and give it such weight as you think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience or if you should conclude that the reasons given in support of the opinion are not sound or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely. If you decide that the reasons given in support of an expert's opinion as to fair market value are valid, you may accept that opinion and give it any weight you think it deserves.
>
> You have also heard the testimony of the landowner's representatives, Simon Falic and Joseph Kearney. Landowners are permitted to testify as to their opinion of the subject property's fair market value. The testimony of a Landowner as to value is

(continued...)

Moreover, defendant did not object to this aspect of the charge.

Finally, the Court rejects defendant's contention that the cumulative impact of the alleged errors deprived it of a fair trial. Apart from Ellis' precluded income capitalization evidence, defendant was permitted to make its case with virtually no limitation. For its own reasons, defendant chose not to elicit fair market value testimony from Ellis regarding comparable sales. The Court permitted extensive testimony from Kearney as the landowner regarding the value of the subject property, including valuation based on the income capitalization method. And defendant supported Kearney's evidence with evidence from other witnesses. It made full use of its cross-examination of the government's expert Casale not only to challenge his evidence but to assist defendant in establishing its own position. Neither the government's summation nor the Court's charge to the jury were prejudicial to defendant. Based on the evidence, the jury reached an eminently reasonable verdict. Defendant received a fair trial.

---

[6](...continued)
> to be weighed and considered by you the same as that of any other witness expressing an opinion as to fair market value of the property on the date of the taking. As with any other witness, if you decide that his opinion is not based upon sufficient information or experience or that the reasons given in support of the of the opinion are not sound or it is outweighed by other evidence, you may disregard the opinion entirely, or give to it such weight as, in your judgment, you think it merits after considering all the evidence before you. If you decide that the reasons given in support of a landowner's opinion as to fair market value are valid, you may accept that opinion and give it any weight you think it deserves.
>
> Now, both sides in this case have offered opinion evidence as showing the value of the property taken. You are the sole judges of the credibility of the witnesses who have testified before you and the weight to be given the testimony of each.
>
> The jury should take into consideration the opportunities of the several witnesses for seeing and knowing the things to which they testified, their conduct and demeanor while testifying, their interest or lack of interest, if any, in the result of this proceeding, the reasonableness or unreasonableness of their testimony, the extent of their investigation to determine the facts, and from all the facts and circumstances, consider the weight to be given the testimony of each.


It is therefore

ORDERED that the motion for a new trial (Dkt. Nos. 160, 171) is denied.

IT IS SO ORDERED.

September 30, 2011

_____
Norman A. Mordue
Chief United States District Court Judge